UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| DELETTRIA WHITEHEAD, Individually, and as class representative for all others similarly situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>J I FINANCIAL, LLC; GLOBAL CLIENT SOLUTIONS, LLC f/k/a CFG ACCEPTANCE, LLC; LUFTMAN HECK & ASSOCIATES, LLP, f/k/a FORNA, LUFTMAN & HECK, LLC; WILLIAM J. FORNIA; BENJAMIN LUFTMAN; JEREMIAH HECK; and UNKNOWN PARTIES A, B, C, and D whose real and proper identities are unknown at present,<br><br>    Defendants. | CASE NO. CV410-262 |

**DEFENDANT GLOBAL CLIENT SOLUTIONS, LLC'S
MOTION TO COMPEL ARBITRATION
<u>WITH INCORPORATED MEMORANDUM OF LAW</u>**

Pursuant to LR 7.1 of this Court, Defendant Global Client Solutions, LLC ("Global") serves this motion and memorandum of law in support of its motion to compel arbitration. As discussed more fully below, there are several reasons for compelling this matter to arbitration, dismissing the class claims and staying the action.

First, the claims asserted here involve a valid and enforceable contract in interstate commerce, which contains an arbitration provision. The claims, therefore, are subject to the Federal Arbitration Act (the "FAA"). Second, the agreement and arbitration provision is silent with respect to class treatment, so, such treatment is foreclosed, under the controlling legal authority. Finally, the FAA expressly requires a stay of this action during any arbitration.

*Whitehead v. Global Client Solutions, et al.*
Motion to Compel Arbitration
Case No.: CV410-262

## MEMORANDUM OF LAW

### I.     PREFACE

On September 22, 2010, Plaintiff filed this putative class action lawsuit in the Superior Court of Toombs County, Georgia against J I Financial, LLC ("JIF"), Luftman Heck & Associates, LLP f/k/a Fornia, Luftman & Heck, LLC ("LHA"), William J. Fornia, Benjamin Luftman, Jeremiah Heck, Unknown Parties A, B, C, and D whose real and proper identities are unknown at present (collectively, "Debt Adjuster Defendants") and Global.[1] On November 3, 2010, Global timely removed this action to this Court.[2] Further, on November 18, 2010, Plaintiff filed a Notice of Dismissal, dismissing her claims without prejudice as to Defendants William J. Fornia and Benjamin Luftman.[3]

Essentially, Plaintiff accuses Global of violating three provisions of Georgia's Debt Adjusting Act ("GDAA").[4] Plaintiff seeks to certify three classes of Georgia residents, one for each of the three counts. Specifically, in Count I, Plaintiff seeks to certify a class of those customers from whom Defendants allegedly collected fees in violation of OCGA § 18-5-2[5]; in Count II, Plaintiff seeks to certify a class of customers for whom Defendants allegedly failed to disburse customer funds to their respective creditors within the proscribed time limits of OCGA § 18-5-3.2(a)[6]; and in Count III, Plaintiff seeks to certify a class of those customers because supposedly there was no separate trust account for Plaintiff's money, an alleged violation of

---

1. [Doc. 1-3.].
2. [Doc. 1.].
3. [Doc. 13.].
4. [Doc. 1-3 ¶¶ 1 & 2.].
5. [Doc. 1-3 ¶¶ 92-103.].
6. [Doc. 1-3 ¶¶ 104-113.].

OCGA § 18-5-3.2(b).[7] Plaintiff likewise seeks class-wide injunctive relief as well pursuant to OCGA § 9-11-23(b)(2).[8]

Conspicuously, Plaintiff avoids attaching the agreement to the Complaint upon which she bases her claims against Global. The Eleventh Circuit has made clear that because Plaintiff's agreement with Global is alleged in the Complaint[9] and the allegations about the agreement are central to the Plaintiff's claim, this Court may consider the agreement.[10] Global, therefore, under separate filing provides the agreement and other documents pertaining to the Account underlying Plaintiff's claims against Global.[11] As described below, the agreement requires arbitration of all claims alleged by Plaintiff against Global herein.

## II. PERTINENT FACTS

### A. THE PARTIES.

Plaintiff Whitehead alleges she lives in Georgia.[12] She admits that Global is an Oklahoma limited liability company, with its principal offices in Tulsa, Oklahoma,[13] which processed electronic transfers from her bank account.[14]

As to the other Defendants, Plaintiff alleges that JIF was a foreign limited liability company incorporated in Ohio which was dissolved on or before June 15, 2004.[15] Plaintiff

---

7. [Doc. 1-3 ¶¶ 114-123.].
8. [Doc. 1-3 ¶ 124.].
9. *See, e.g.* [Doc. 1-3 ¶ 115.] ("Plaintiff was required by the Contract with Defendants to set up and maintain her own trust account…").
10. *See Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir.2007) (Commenting on attaching documents to a motion to dismiss, the court stated it: "…recognizes an exception, however, in cases in which a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss.").
11. *See* Brett Hampton's Declaration at ¶ 4; Ex. 1 & 2.
12. [Doc. 1-3 ¶ 16.].
13. [Doc. 1-3 ¶ 22.].
14. *See, e.g.,* [Doc. 1-3, ¶¶ 73 & 83.].
15. [Doc. 1-3 ¶¶ 17 & 21.].

further alleges that LHA is a law firm and Ohio corporation doing business in Georgia.[16] Jeremiah Heck, according to Plaintiff, is an attorney licensed to practice in Ohio doing business as LHA.[17]

### B. THE DEBT SETTLEMENT PROGRAM.

Plaintiff alleges she initially contracted with defendant JIF in 2003, but asserts that her debt program in June of 2004 was transferred to another defendant LHA,[18] and that she terminated the program in February of 2007.[19] Rather than making distinct allegations about what the respective defendants purportedly did, throughout the complaint Plaintiff improperly attributes all the conduct to all the Defendants; clearly, however, Global and Plaintiff have a contractual agreement to arbitrate, irrespective of what Plaintiff's relationship with the other Defendants may be.[20] Without question, Plaintiff's claims against Global rest on its servicing of Plaintiff's bank account as set forth in the agreement, an account from which she made payments under her debt settlement program.[21]

### C. THE RMBT ACCOUNT AGREEMENT.

On July 26, 2004, Plaintiff signed a Special Purpose Account Application (the "Account Application") to open a bank account at Rocky Mountain Bank & Trust ("RMBT")[22] to be serviced by Global.[23] The Account Application Plaintiff signed provides, in pertinent part, that:

---

16. [Doc. 1-3 ¶ 28.].
17. [Doc. 1-3 ¶ 52.].
18. [Doc. 1-3 ¶¶ 68, 72.].
19. [Doc. 1-3 ¶ 80.].
20. As the Eleventh Circuit Court of Appeals has made so poignantly clear, "in a case with multiple defendants, the complaint should contain specific allegations with respect to each defendant; generalized allegations "lumping multiple defendants together are insufficient." *West Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 2008 WL 2845215, *4 (11th Cir. July 24, 2008) (citations omitted).
21. *See, e.g.,* [Doc. 1-3 ¶¶ 73 & 83.].
22. *See* Hampton Dec. at ¶ 4; Ex. 1.
23. *See* Hampton Dec. at ¶ 4.

> *I hereby apply for and establish a special purpose account (the "Account") with Rocky Mountain Bank & Trust of Colorado Springs, Colorado ("Bank") for the purpose of creating an effective and disciplined approach to fulfilling my obligations under a debt management program (the "Program") sponsored by the organization identified below (the "Sponsor"). I understand that the Accounts features, terms, conditions and rules are further described in an Account Agreement and Disclosure Statement that accompanies this Application (the "Agreement"). I acknowledge that I have received a copy of the Agreement; that I have read and understand it; that the Agreement is fully incorporated into this Application by reference; and that I am bound by all of its terms and conditions.*[24]

Plaintiff received the account agreement and disclosure statement (the "Account Agreement"), which governed her account, along with the Account Application she completed.[25] The Account Agreement used at the time Plaintiff opened her account is attached hereto.[26]

Global accepted Plaintiff's Account Application, and established her account.[27] Each month after establishing and using Plaintiff's Account, from August 2004 through February 2007, Global mailed to Plaintiff at the address she provided, by first class mail and proper postage, a paper statement, reflecting her account activity.[28] For the period of time Plaintiff had her RMBT bank account, Global processed Account transactions at her direction.[29]

As set forth in the Account Agreement, Global facilitates an Automated Clearing House ("ACH") function for account holders and their banks. Essentially, ACH transactions are payment instructions to either debit or credit a deposit account. An ACH transaction involves an electronic funds transfer between an originating and a receiving financial institution. ACH payments can either be credits, originated by the accountholder sending funds (payer), or debits, originated by the accountholder receiving funds (payee).[30] Financial institutions usually contract

---

24. *See* Hampton Dec. at Ex. 1.
25. *See* Hampton Dec. at ¶ 4.
26. *See* Hampton Dec. at ¶ 4; Ex. 2.
27. *See* Hampton Dec. at ¶ 5.
28. *See* Hampton Dec. at ¶ 6.
29. *See* Hampton Dec. at ¶ 8; Ex. 2.
30. *See* Hampton Dec. at ¶ 7.

with third-party service providers – such as Global in this case – to conduct the bank's ACH activities. Indeed, independent third parties not ordinarily affiliated with a financial institution now generate significant ACH payment/transactional activity.[31]

ACH payments are used in a variety of payment environments. Originally, consumers primarily used ACH processing for paycheck direct deposit. Now, they increasingly use the ACH for bill payments (often referred to as direct payments), corporate payments (business-to-business), and government payments (*e.g.,* tax refunds).[32]

### III.   ARGUMENT

Plaintiff is pursuing a putative class action based on a statute that governs debt settlement companies. In the lawsuit Plaintiff accuses Global, a bank's account processing agent, of being a "debt adjuster." The fact is, however, and as the Account Agreement reflects, Global was simply facilitating, at the Plaintiff's request, ACH transfers, that is, ACH payment instructions Global received from Plaintiff to either debit or credit a deposit account.[33] So all Global did here was act as processor for all the activity that related to the Account the Plaintiff controlled, and in this case, which she established at RMBT.[34] The Account Agreement alleged in the Complaint, which governs the relationship between Plaintiff and Global provides, in part, that:

> **Arbitration and Application of Law:** In the event a dispute or claim relating in any way to this Agreement or our services, you agree that this dispute shall be resolved by a binding arbitration utilizing a qualified independent arbitrator of our choosing. Further, you agree that any arbitration shall take place in Colorado Springs, Colorado and that the law of Colorado shall apply. The decision of an arbitrator will be final and subject to enforcement in a court of competent jurisdiction.[35]

---

31.   *See* Hampton Dec. at ¶ 8.
32.   *See* Hampton Dec. at ¶ 7.
33.   *See* Hampton Dec. at ¶¶ 7 & 8.
34.   *See* Hampton Dec. at ¶¶ 8 & 9.
35.   *See* Hampton Dec. at Ex. 2.

As evidenced by the language of this arbitration clause, any claims related to services performed by Global under the Account are matters for contractual arbitration; not for federal court litigation brought by opportunistic lawyers who are pursuing "debt adjuster" claims against a bank's processing agent solely to leverage the litigation either for an exorbitant settlement or for statutory attorneys' fees. The determination of what Global did under the Account Agreement to which Plaintiff agreed, however, is a matter to be decided in arbitration. This Court, therefore, must (A) compel this matter to arbitration, (B) foreclose class action arbitration and (C) stay this proceeding pending arbitration, as discussed next.

**A. THE CLAIMS ASSERTED HERE INVOLVE A CONTRACT IN INTERSTATE COMMERCE, WHICH CONTAINS A VALID AND ENFORCEABLE ARBITRATION CLAUSE REQUIRING THE COURT TO COMPEL THIS MATTER TO ARBITRATION**

**1. The FAA and its relevant provisions.**

In enacting the FAA, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."[36] Indeed, the FAA embodies "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary" and "creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act."[37] To this end the Federal Arbitration Act, 9 U.S.C. § 2 provides in pertinent part that:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and

---

36.   *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)).
37.   *Moses H. Cone Mem. 7 Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1993).

7

enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.[38]

Furthermore, the FAA provides authority for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement (9 U.S.C. § 4), and for stays of proceedings when an issue in the proceeding is referable to arbitration (9 U.S.C. § 3).[39]

Arbitration, the United States Supreme Court has stressed, is favored in consumer disputes:

> We agree that Congress, when enacting this law [the FAA], had the needs of consumers, as well as others, in mind . . . . [T]he Act, by avoiding the delay and expense of litigation, will appeal to big business and little business alike, corporate interests [and] individuals. Indeed, arbitration's advantages often would seem helpful to individuals, say, complaining about a product, who need a less expensive alternative to litigation.[40]

As a matter of federal law, therefore, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.[41] Indeed, "[b]y its terms, the Act leaves no place for the exercise of discretion by a district court . . . ."[42]

Given the foregoing general principles regarding arbitration, in order to determine whether to compel a matter to arbitration, the court must find that the dispute is arbitrable, "meaning that a valid agreement to arbitrate exists between the parties" and the arbitration

---

38. 9 U.S.C. § 2. The term "involving commerce" covers more than just persons or activities within the flow of interstate commerce; it should be broadly construed to the full limit of Congress' Commerce Clause power, so that it applies to any contract affecting interstate commerce regardless of whether the parties intended the contract to affect interstate or international commerce. *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 274 (1995); *see also* 9 U.S.C. § 1.
39. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991); *Moses H. Cone*, 460 U.S. at 1. As clearly established by the U.S. Supreme Court, even statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the Act. *Gilmer*, 500 U.S. 20.
40. *Allied-Bruce Terminix*, 513 U.S. at 280 (citations omitted, brackets in original). *See also Randolph v. Green Tree Fin. Corp.*, 531 U.S. 79 (2000) (enforcing arbitration clause in dispute between consumer and lender); *Gilmer*, 500 U.S. at 32-33 (enforcing arbitration clause in dispute between employer and employee); *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173 (3d Cir. 1999) (enforcing arbitration clause in dispute between consumer and lender).
41. *See Becker v. Davis*, 491 F.3d 1292, 1305 (11th Cir. 2007).
42. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

agreement encompasses the specific claims of the pending proceeding.[43] Here, as discussed next, the dispute is arbitrable and encompasses the claims being pursued because (a) interstate commerce is involved with parties from different states, (b) there is in fact a written agreement to arbitrate and (c) the scope of the arbitration agreement encompasses Plaintiff's claims.

### 2. The Service for which Plaintiff contracted with Global involves Interstate Commerce.

The FAA applies in this case both by operation of law and agreement of the parties. The United States Supreme Court has established that an agreement requiring arbitration of disputes between parties which involves or affects interstate commerce is specifically enforceable under the FAA.[44] Section 2 of the FAA, 9 U.S.C. § 2, provides that a written arbitration provision contained within a "contract evidencing a transaction involving commerce" is valid, irrevocable and enforceable. The FAA defines "commerce" as "commerce among the several states."[45] "[T]he word 'involving' . . . signals an intent to exercise Congress' commerce power to the full," and the phrase "'evidencing a transaction' means[s] only that the transaction . . . turn[s] out, in fact, to have involved interstate commerce," even if the parties did not contemplate an interstate commerce connection.[46] Further, the term "commerce" is to be broadly construed.[47]

Application of these standards to the facts of the present case leaves no doubt that the FAA applies here. Plaintiff and the putative class members are residents of Georgia.[48] Global is

---

43.   *AT & T Techs. v. Communications Workers of Am.,* 475 U.S. 643, 649, 106 S.Ct. 1415 (1986).
44.   *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52; 123 S. Ct. 2037, 2038 (2003) (*citing Allied Bruce Terminix Companies v. Dobson*, 513 U.S. 265 (1995)); *see also* 9 U.S.C. § 2.
45.   9 U.S.C. § 1.
46.   *Allied-Bruce Terminix*, 513 U.S. at 281 (emphasis in original).
47.   *Prima Paint Corp. v. Flood & Conklin Mfg. Corp.*, 388 U.S. 395, 401-02 (1967); *see also Citizens Bank v. Alafabco*, Inc., 123 S.Ct. 2037, 2040 (2003) ("We have interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce' - words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power").
48.   [Doc. 1-3 ¶¶ 16, 99, 109 & 119.].

incorporated and resides in Tulsa, Oklahoma.[49] Plaintiff's Account was housed at RMBT in Colorado and Global serviced Plaintiff's Colorado bank account from its facility in Oklahoma.[50] Global used the U.S. Postal Service to transmit account statements to Plaintiff at her residence in Georgia.[51] These activities, among others, unquestionably satisfy the FAA's interstate commerce requirement.[52]

### 3. The Account Agreement is a valid contract, containing an enforceable arbitration provision under federal and state law.

The arbitration provision in the Account Agreement Plaintiff received, and referenced and incorporated in the Account Application she signed, states:

> **Arbitration and Application of Law**: In the event a dispute or claim relating in any way to this Agreement or our services, you agree that this dispute shall be resolved by a binding arbitration utilizing a qualified independent arbitrator of our choosing. Further, you agree that any arbitration shall take place in Colorado Springs, Colorado and that the law of Colorado shall apply. The decision of an arbitrator will be final and subject to enforcement in a court of competent jurisdiction.[53]

If Plaintiff contests arbitration, she bears the burden of showing that the arbitration provision in the Account Agreement is invalid or does not encompass the claims she is raising.[54] Under Section 2 of the FAA Plaintiff can only contest arbitrability on two grounds: one, a challenge of the contract as a whole or, two, a challenge to the validity of the agreement to arbitrate.[55]

---

49. *See* Hampton Dec. at ¶ 2.
50. *See* Hampton Dec. at ¶ 11.
51. *See* Hampton Dec. at ¶ 6.
52. *See, e.g., Staples v. The Money Tree, Inc.*, 936 F. Supp. 856 (M.D. Ala. 1996) (loan transaction involving out-of-state lenders was a transaction involving commerce subject to the FAA); *Stiles v. Home Cable Concepts*, 994 F. Supp. 1410, 1417 (M.D. Ala. 1998) (interstate commerce existed where loans of Alabama borrowers were approved in Georgia and proceeds were wired from Georgia).
53. *See* Hampton Dec. at Ex. 2.
54. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).
55. *Rent-A-Center, West, Inc. v. Jackson*, 130 S.Ct. 2772, 2778 (2010) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006)).

Similarly, Georgia courts determine if an agreement to arbitrate is enforceable under general principles of contract law.[56] Under Georgia law a contract is formed on mutual assent; the parties' assent to a contract is determined through

> an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent, or that meaning which the other contracting party knew the first party ascribed to his manifestations of assent.[57]

So, given the facts and the parties' assent to arbitrate Plaintiff's GDAA claims, this matter must be compelled to arbitration under both the FAA and Georgia state law, as discussed next.

On July 26, 2004, Plaintiff completed, signed and returned the Account Application to open a bank account.[58] The Account Application specifically incorporated the terms of the Account Agreement by reference and Plaintiff acknowledged and agreed she received the agreement when she signed the application.[59] Furthermore, from August 2004 through February 2007, that is, each month after she established and used her account, Global mailed to Plaintiff by first class mail and proper postage to the address she provided, a paper statement detailing all account activity she authorized in connection with her bank account during each particular calendar month.[60] The Account Application, Account Agreement and the parties' respective conduct (Plaintiff using the account and Global servicing the account by effecting ACH transactions) reflect the objective manifestations of contractual assent.[61]

---

56.   *See Caley v. Gulfstream Aerospace Corp.,* 428 F.3d 1359, 1368 (11th Cir.2005) ("Thus, in determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts. The federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law.").
57.   *Terry Hunt Construction, Inc. v. Aon Risk Services, Inc. of Georgia,* 272 Ga.App. 547, 551, 613 S.E.2d 165, 169 (2005).
58.   Hampton Dec. at ¶ 4; Ex. 1 & 2.
59.   Hampton Dec. at Ex. 1.
60.   *See* Hampton Dec. at ¶ 6.
61.   *See* Hampton Dec. at ¶ 4; Ex. 1 & 2.

Furthermore, Plaintiff can neither challenge the validity of the parties' agreement pertaining to her bank account nor the provision in the agreement calling for arbitration.

In every material way, Plaintiff accepted the benefits of the Account Agreement and Global's performance under it. For certain nominal fees more fully described in the agreement, at Plaintiff's direction, Global conducted ACH transfers for her Account according to her explicit authorization. Under Georgia law, "[p]arties may be bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated, such as by the acceptance of benefits under the contract, or the acceptance by one of the performance by the other".[62] Indeed, Georgia courts have gone so far as to find that that an arbitration provision existed in an unsigned agreement where the party contesting the agreement accepted the benefits thereof without prior objection is binding.[63] So, even if Plaintiff contends that she did not sign the Account Agreement, the assent she demonstrated to the terms of Account Agreement through her performance created a valid and enforceable contract here. Also, Plaintiff further agreed to the terms of the Account Agreement by executing the one page Account Application to open her Account at RMBT as the second sentence thereof incorporates the terms of the Account Agreement by reference, which includes the arbitration provision.

As the foregoing demonstrates, Plaintiff and Global entered into the Account Agreement, and each acted on this agreement, which fully manifested assent to all its terms, including the

---

62. *See, e.g., Comvest, L.L.C. v. Corp. Sec. Group, Inc.,* 234 Ga.App. 277, 280, 507 S.E.2d 21, 24-25 (1998); *Athon v. Direct Merchants Bank,* No. 5:06-cv-1, 2007 WL 1100477, at *4 (M.D.Ga. Apr. 11, 2007) ("[U]nder Georgia law, the parties to an arbitration agreement may demonstrate their assent to be bound by the agreement by acting upon or accepting benefits under the contract containing the arbitration agreement."); *see also Terry Hunt Construction, Inc.,* 272 Ga.App. at 551.
63. *See Honig v. Comcast of Georgia I, LLC*, 537 F.Supp.2d 1277, 1283 (N.D. Ga. 2008) (citations omitted) ("Additionally, because Honig accepted Comcast's cable service by paying for it and receiving its benefits without any objection, she is also bound by the arbitration provision under well established Georgia law that valid contracts, including contracts containing arbitration clauses, may be formed by a party's continued use or acceptance of services without objection.").

arbitration provision. A valid and enforceable agreement containing a valid and enforceable provision to arbitrate exists here. Accordingly, Plaintiff is foreclosed from pursuing either her own claims or the claims on behalf of a putative class in this proceeding because she agreed to arbitrate her claims.

### 4. Plaintiff's claims fall with the scope of the arbitration provision.

Plaintiff attempts to allege three separate violations of Georgia's Debt Adjusting Statute.[64] Central to Plaintiff's claims are that the services Global provided constitute debt adjusting and that the fees she paid Global under the Account Agreement are in excess of the statutory rate a debt adjuster may charge. Plaintiff's claims arise directly from the ACH and bank account management services Global provided pursuant to the Account Agreement, and so Plaintiff's claims are well within the scope of its arbitration provision.

The broad language of the arbitration clause explicitly covers all claims or disputes "relating in any way to [the] Agreement or to [Global's] services . . . ."[65] As such, since the three counts alleged by Plaintiff each pertain directly to the services provided to her under the Account Agreement, the claims easily fall within the ambit of the clause's expansive language. Even if Plaintiff attempts to contest the arbitrability of these claims, any doubts concerning the scope of arbitrable issues is resolved in favor of arbitration[66], further supporting Global's position herein.

Moreover, should this Court harbor any concerns about whether these statutory claims should be compelled to arbitration, the law is well settled that statutory claims enjoy no special

---

64. [Doc. 1-3 ¶¶ 92-117.].
65. *See* Hampton Dec. at ¶ 4; Ex. 2.
66. *See, e.g., Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001); *Randolph*, 531 U.S. at 89; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995); *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24; *see also Honig*, 537 F.Supp.2d at 1282 (N.D. Ga. 2008) (citations omitted).

exemption from arbitration. A party agreeing to arbitrate statutory claims "does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."[67] "Even claims arising under a statute designed to further important social policies may be arbitrated because so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute serves its function."[68] Here, no features of the GDAA or remedies sought or that can be provided hinder Plaintiff from vindicating these statutory claims in an arbitral forum.

Thus, given the broad language of the arbitration clause, the controlling law and the ability of Plaintiff to fairly adjudicate her statutory claims in the agreed to arbitration forum, the claims Plaintiff asserts plainly fall within the scope of arbitration.

### B. THE ACCOUNT AGREEMENT IS SILENT WITH RESPECT TO CLASS ARBITRATION, WHICH FORECLOSES A CLASS ARBITRATION OF THE CLAIMS ASSERTED HERE.

The arbitration provision in the Account Agreement is silent regarding class action arbitration and its procedures, and, while arbitration is required, there can be no class action arbitration here under the controlling legal authority.

In *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,[69] the Supreme Court reaffirmed that cases styled as class actions are equally subject to mandatory arbitration. But where there is no specific agreement to arbitrate class claims, the parties, while required to arbitrate, could <u>not</u> be compelled to arbitrate their suit as a class action. In simple and clear terms the Supreme Court

---

67. *Anders v. Hometown Mortgage Services, Incorporated,* 346 F.3d 1024, 1029 (11th Cir.2003).
68. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000) (citations omitted) (holding that parties may arbitrate federal TILA claims).
69. 130 S.Ct. 1758, 1774-75, (2010).

held "that a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so."[70]

In the instant case, and as *Stolt-Nielsen S.A.* and the other authority cited above shows, because the Account Agreement and its arbitration provision is silent with respect to the right to pursue a class action—Plaintiff cannot pursue a class action.[71] As such, this Court must compel the arbitration of Plaintiff's individual claims, but is wholly without the power or authority to compel arbitration on behalf of a putative class. By assenting to the arbitration provision in the Account Agreement, Plaintiff relinquished certain "procedural niceties" available to her in court, such as the ability to pursue a class action.[72] Therefore, as explained in *Stolt-Nielsen S.A.*, under these circumstances, silence regarding any procedures for or even the availability of class arbitration is best construed as a prohibition of it. Thus, Plaintiff must be compelled to arbitrate her claim, but her class allegations must be dismissed.

### C. IF NOT DISMISSED, A STAY OF THE ACTION IS REQUIRED BY THE FAA.

Should the Court decide not to dismiss Plaintiff's claims,[73] Section 3 of the FAA expressly provides that, where a valid arbitration agreement requires a dispute to be submitted to binding arbitration, the district court shall stay the action "until such arbitration has been had in

---

70. 130 S.Ct. at 1774. Likewise, the Eleventh Circuit has held that a district court is without power to consolidate arbitration proceedings, over the objection of a party to the arbitration agreement, when the agreement is silent regarding consolidation. *Protective Life Insurance Corp. v. Lincoln National Life Insurance Corp.,* 873 F.2d 281 (11th Cir.1989).
71. *See* Hampton Dec. at ¶ 4; Ex. 2.
72. The contractual nature of arbitration means that parties may specify with whom they choose to arbitrate their disputes. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) ("[N]othing in the [FAA] authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement" (emphasis added)); *Moses H. Cone,* 460 U.S. at 20 ("[A]n arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement"); *accord, First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943 ("[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes-but only those disputes-that the parties have agreed to submit to arbitration").
73. On the various grounds argued in Global's separately filed Motion to Dismiss.

accordance with the terms of the agreement."[74] The Georgia Arbitration Act likewise provides that if any action is brought upon any issue referable to arbitration under an agreement for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement, shall on application of one of the parties, stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement.[75]  As such, if this claim is not dismissed, a stay of the action is required pending the outcome of the arbitration.

## IV. CONCLUSION

As the foregoing demonstrates, there is a valid agreement in interstate commerce between the parties, which contains an enforceable arbitration provision. Consequently, this action must be compelled to arbitration under the FAA. Moreover, since the agreement is silent on class treatment, there can be no class action arbitration, alternatively, since arbitration of Plaintiff's individual claims must be compelled, if not dismissed, a stay of the action is required under the FAA.

---

74.  9 U.S.C. § 3; *Rent-A-Center, West, Inc. v. Jackson*, 2010 WL 2471058, 130 S.Ct. 2772, 2776 (2010); *see also Caley v. Gulfstream Aerospace Corp.,* 428 F.3d 1359 (11th Cir.2005).
75.  OCGA § 9-9-6(a).

*Whitehead v. Global Client Solutions, et al.*
Motion to Compel Arbitration
Case No.: CV410-262

Respectfully,

Dated: December 6, 2010.

GREENSPOON MARDER, P.A.

/s/ Richard W. Epstein
RICHARD W. EPSTEIN
Florida Bar No. 229091
Richard.Epstein@gmlaw.com
REBECCA F. BRATTER
Florida Bar No. 0685100
Rebecca.Bratter@gmlaw.com
*Attorneys for Global Client Solutions, LLC*
100 West Cypress Creek Rd., Suite 100
Ft. Lauderdale, FL 33309
Telephone: (954) 491-1120
Facsimile: (954) 771-9264

WEINSTOCK & SCAVO, P.C.
CHARLES J. BOWEN
Georgia Bar No. 071115
cbowen@wmlaw.net
*Attorneys for Global Client Solutions, LLC*
7 East Congress St.
Savannah, GA 31401
Telephone: (912) 944-1675
Facsimile: (912) 495-0166

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served by ECF notice or U.S. mail to the persons indicated on this 6th day of December, 2010.

s/ Richard W. Epstein